**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**ZURICH AMERICAN INSURANCE COMPANY,**
as subrogee of Mircobac Laboratories, Inc.

                          **Plaintiff,**

     v.                                    5:21-CV-374
                                              (TJM/ATB)

**NIAGARA MOHAWK POWER CORPORATION,**
d/b/a National Grid, **ITRON, INC.,** and **ABB
INSTALLATION PRODUCTS, INC.,**

                          **Defendants.**
_____

**THOMAS J. McAVOY,**
Sr. U. S. District Judge

## DECISION & ORDER

      Before the Court is Defendant Itron, Inc.'s motion to dismiss Plaintiff's Complaint. See dkt. # 23. The parties have briefed the issues and the Court has determined to decide those issues without oral argument.

**I.    BACKGROUND**

      Plaintiff Zurich American Insurance Company ("Zurich") brings this action as the subrogee of its insured, Microbac Laboratories, Inc. ("Microbac"). The cases arises from a fire that occurred at facilities operated by Microbac in Cortland, New York. Complaint ("Comptl."), dkt. # 1, at ¶ 8. Zurich insured that property. Id. at ¶ 9. Plaintiff alleges that Defendant National Grid USSA Service Company, Inc. ("National Grid") supplied electric power to the property. Id. at ¶ 10. National Grid had "replaced and/or installed a Sentinel

1

16S electric meter and panel box at the subject property" before the fire. Id. Defendant Itron, Inc. ("Itron") "deisgned, manufactured, distributed, sold, assembled and supplied" the meter in question. Id. at ¶ 11.

Plaintiff alleges that on September 16, 2018, "there was electrical activity in a utility room at the subject property causing fire, water and smoke damage to Microbac's real and personal property as well as a loss of use of said property." Id. at ¶ 13. Microbac submitted a claim to Zurich because of the damage to the property, and Zurich "paid $3,705,998.00 for the damages suffered by its insured." Id. at ¶ 15. That payment caused Zurich to become subrogated to Microbac's rights. Id. at ¶ 16.

Plaintiff filed a six-count Complaint in this case, naming various defendants including Intron, the moving party here. Three Counts name the moving Defendant, Itron. Count II alleges strict products liability. Count IV alleges negligence. Count VI alleges a breach of express and implied warranties.

Defendant Itron filed the instant motion to dismiss after service of the Complaint. Plaintiff responded. Itron did not file a reply brief, and the matter is now ripe for decision.

## II.    LEGAL STANDARD

Itron moves to dismiss certain of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Itron argues that Plaintiff has not stated a claim upon which relief could be granted, even if all factual allegations in the complaint were proved true. In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). This tenet does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." Id. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).

## III.   ANALYSIS

Defendant seeks dismissal of all claims against Itron, arguing primarily that Plaintiff has pled insufficient facts to make the claims plausible.[1] Defendant also contends that Plaintiff has failed properly to allege damages. The Court will address each argument in turn.

### A.   Strict Products Liability[2]

Itron first argues that Plaintiff has failed to plead facts sufficient to make plausible Zurich's strict products liability claim. Defendant contends that Plaintiff has not alleged facts sufficient to make out a design defect, a manufacturing defect, or a failure-to-warn claim. Plaintiff responds that the allegations in question are sufficient to support the claims

---

[1] The Court would permit Zurich to re-plead the claims in question in any case, as Defendant does not even attempt to argue that Plaintiff has admitted facts that would make recovery a legal impossibility and cause the Court to dismiss with prejudice. Defendant does not argue, for example, that Plaintiff alleges that the facts admitted demonstrate that the statute of limitations bars Plaintiff's claims. Defendant also does not argue that defending against Plaintiff's claims is impossible unless Plaintiff pleads additional facts. Instead, Defendant asserts that Plaintiff must plead additional facts to meet the plausibility standard. The law certainly permits Defendant to make these arguments in good faith. The Court observes that this case is evidence of how the Iqbal/Twombly standard has shifted federal litigation practice towards a game of pleading. The Court will of course apply carefully the pleading standard articulated by the Supreme Court and the Court of Appeals.

[2] The parties appear to agree that New York substantive law applies in this diversity action. The Court will apply that state's substantive law.

the Complaint raises.

Plaintiff's products liability claim alleges in relevant part:

23. At all relevant times, Defendant Itron, Inc., by and through its agents, servants and/or employees, was engaged in the designing, manufacturing, selling, testing, distributing, supplying and/or assembling of the subject meter, for which activity and resulting harm thereof, Defendant Itron is strictly liable in tort in failing to produce and distribute a product that was not defective, reasonably fit, suitable and safe when used for its intended or reasonably foreseeable purposes.

24. The loss and consequent damage to the Plaitniff's insured's property were directly and proximately caused by Defendant Itron's product, the subject meter, that was defective at the time it was sold, unfit and unreasonably dangerous, and for which Defendant, Intron[,] is strictly liable in tort for:

   a) failing to design, manufacture, assemble and distribute a product that was reasonably fit, suitable and safe when used for its intended or reasonably foreseeable purposes;
   b) designing, manufacturing, testing, selling, distributing, supplying and/or assembling the subject meter in a defective and unreasonably dangerous condition;
   c) failing to warn of the aforesaid defection condition of the subject meter, both before and after the fire; and
   d) failure of the meter due to MOV or internal circuitry failure or terminal specification.

Complt. at ¶¶ 23-24.

In New York, "[a] manufacturer who places into the stream of commerce a defective product which causes injury may be liable for such injury." Amatulli v. Delhi Constr. Corp., 77 N.Y.2d 525, 532, 571 N.E.2d 645, 648 (1991). Defects in a product "may consist of a mistake in manufacturing, an improper design or the inadequacy or absence of warnings for the use of the product." Id. "To recover for injuries caused by a defective product, the defect must have been a substantial factor in causing the injury, and 'the product must have been used for the purpose and in the manner normally intended or in a manner reasonably foreseeable.'" Hartnett v. Chanel, Inc., 97 A.D.3d 416, 419, 948 N.Y.S.2d 282,

4

285 (1st Dept. 2012) (quoting Amatulli, 77 N.Y.2d at 532).

Itron contends that Plaintiff has failed to alleged sufficient facts to make plausible each type of strict products liability claim. The Court will address each such type of claim in turn.

### i. Design Defect

"'[A] defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use,' and 'whose utility does not outweigh the danger inherent in its introduction into the stream of commerce.'" Hoover v. New Holland N. Am., Inc., 23 N.Y.3d 41, 53-54, 11 N.E.3d 693, 701 (2014) (quoting Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 107 (1983)). Such a claim requires a showing that the plaintiff "was injured, that the defendant produced a product that was not 'reasonably safe' for its intended use, and that the product's 'defect was the proximate cause of the injury.'" Caronia v. Philip Morris United States, Inc., 715 F.3d 417, 423 (2d Cir. 2013) (quoting Caronia v. Philip Morris USA, Inc., No. 06 CV-224, 2010 U.S. Dist. LEXIS 12168, at *4 (E.D.N.Y. Feb. 11, 2010)).

Defendant argues that Plaintiff has failed to make out a design defect claim because the Complaint does not allege that the meter presented a substantial likelihood of harm, that a safer alternative design was feasible, or that the design defect was the proximate cause of the injuries in this case. "Namely," Defendant claims, "plaintiff does [not] identify any particular component of the Sentinel 16S electric meter that was defective, does not set forth any specific issue with the design itself, and does not . . . plead the existence of a

feasible alternative design." In other words, Itron insists "plaintiff fails to allege the 'particular problem' with the design" of the offending product, "let alone how that problem caused the plaintiff's injury." Itron insists that Plaintiff's allegations are merely conclusory and should be dismissed.

The Court agrees that many of the allegations in the Complaint are conclusory in that they simply set forth the elements of a design defect claim. See Bryan A. Garner, ed., BLACK'S LAW DICTIONARY (8th Ed.) (defining conclusory as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based."). At the same time, however, the Complaint names the product in question and offers an allegation about the failings of that product. Plaintiff alleges that the meter failed "due to [Metal Oxide Variator] or internal circuitry failure or terminal specification," and that those failings caused the fire that damaged Microbac's property. Complt. at ¶ 24(d). Making all inferences in Plaintiff's favor, this allegation can be read as an allegation that the meter contained a specific defect, and that the defect played a role in the fire that caused injury to Plaintiff's insured. See, e.g., Richards v. Johnson & Johnson, Inc., No. 17-cv-178, 2018 U.S. Dist. LEXIS 97899, at *7 (N.D.N.Y. June 12, 2018) ("To survive" a motion to dismiss "the complaint must contain plausible, nonconclusory facts from which the Court may infer that the product, as designed, was unreasonably dangerous for its intended use and caused the plaintiff's injury."). At this early stage in the litigation–especially when the case involves claims of design defect that will require a careful examination of the product and expert testimony–such allegations are sufficient to make plausible that Plaintiff could recover on this claim. There can be no doubt in this case that Plaintiff alleges that Itron's design of the meter was defective, causing the meter to fail, which was the proximate cause of the fire in

6

question. Discovery will determine whether Plaintiff can support these allegations. The Court will deny the motion in this respect.

### ii.     Manufacturing Defect

"[A] defectively manufactured product is flawed because it is misconstructed without regard to whether the intended design of the manufacturer was safe or not." Caprara v. Chrysler Corp., 52 N.Y.2d 114, 128 (N.Y. 1981) (Jasen, J., dissenting).  "To establish a claim based on a manufacturing defect, plaintiff must prove that the product did not perform as intended and that it was defective at the time it left the hands of the manufacturer." Fitzpatrick v. Currie, 52 A.D.3d 1089, 1090 (3d Dept. 2008).  "'Such defects result from some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction.'" Perzone v. Sears, Roebuck & Co., 128 A.D.2d 15, 19 (3d Dept. 1987) (quoting Caprara, 52 N.Y. 2d at 128-129) (dissenting op.)).  In the motion to dismiss context, "'the plaintiff must allege that (1) the product was defective due to an error in the manufacturing process and (2) the defect was the proximate cause of the plaintiff's injury.'" Richards, 2018 U.S. Dist. LEXIS 97899 at *14 (quoting Williamson v. Stryker Corp., No. 12-cv-7083, 2013 U.S. Dist. LEXIS 1044445, at *10, 2013 WL 3833081, at *4 (S.D.N.Y. July 23, 2013)).

Defendant argues that the Court should dismiss this part of Plaintiff's strict liability claim because Plaintiff has not alleged any facts about the manufacturing process.  Plaintiff has not alleged facts that indicate that Itron used improper processes, poor workmanship, or defective materials in making the meter.  Moreover, Defendant claims, Plaintiff's claim fails because Zurich has not pled facts that indicate that other causes of the meter's failure beyond manufacturing defects have been excluded.

7

The Court will deny the motion in this respect as well. The allegations recounted above allege how the meter failed, and point to causes. Making all inferences in the Plaintiff's favor, the Complaint alleges in the alternative that Plaintiff's insured's injuries came because of failings in the manufacture of the device. Such allegations, while bare-bornes, are sufficient to make plausible that failures in the manufacturing process made the meter a fire hazard, and that these failings were a proximate cause of the fire. While Defendant's explanation of what Plaintiff will ultimately need to prove in order to prevail are correct, discovery is necessary to determine whether such evidence exists. As the Second Circuit Court of Appeals has stated, "the facts a plaintiff alleges in a complaint may turn out to be self-serving and untrue. But a court" at the motion-to-dismiss "stage . . . is not engaged in an effort to determine the true facts." Doe v. Columbia Univ., 831 F.3d 46, 48 (2d Cir. 2016). In deciding a Rule 12(b)(6) motion, "[t]he issue is simply whether the facts the plaintiff alleges, if true, are plausibly sufficient to state a legal claim." Id. After all, "[i]f the complaint is found sufficient to state a legal claim, the opposing party will then have ample opportunity to contest the truth of the plaintiff's allegations and to offer its own version." Id. Discovery may proceed on this portion of the products-liability claim as well.

### iii. Failure to Warn

"A manufacturer may be liable for failing to warn against the dangers of foreseeable misuse of its product." Liriano v. Hobart Corp., 92 N.Y.2d 232, 240 (1998). A duty exists "to warn against latent dangers resulting from foreseeable uses of a product." Barclay v. Techno-Design, Inc., 129 A.D.3d 1177, 1180 (3d Dept. 2015). That duty also applies "to dangers posed by reasonably foreseeable unintended uses of a product." Hartnett v. Chanel, Inc., 97 A.D.3d 416, 419 (1st Dept. 2012). "Although the adequacy of the warning

is usually a question of fact, in a proper case the court can decide as a matter of law that there is no duty to warn or that the duty has been discharged as a matter of law." Torres v. City of New York, 127 A.D.3d 1163, 1167 (2d Dept. 2015). "There is no duty to warn of an open and obvious danger of which the product user is aware or should be aware as a result of ordinary observation or as a matter of common sense." Torres, 127 A.D.3d at 1167.

Itron contends that dismissal is necessary on Plaintiff's failure-to-warn claim because the Complaitn does not contained "facts as to the warnings included" on Itron's product, "let alone why they were inadequate." The Court disagrees. While the allegations that Itron failed to warn are fairly conclusory, they are connected to allegations that a specific device had specific problems. Discovery will allow the parties to determine whether any warnings contained on the device or otherwise offered by Itron were adequate in the face of this problem. As author of any warnings the device contained, Itron cannot be unaware of the warnings in question or the nature of the claim about them. The motion will be denied in this respect as well.

### B.     Negligence Claims

Itron next seeks dismissal of Plaintiff's negligence claims. Applying New York law, Itron contends that Plaintiff's strict liability claims are the functional equivalent of any negligence claims. The same principle, Defendant argues, applies to failure-to-warn claims. Defendant therefore relies on the arguments related above to seek dismissal of Plaintiff's negligence claims. Plaintiff agrees on this legal standard and argues that the Court should deny Itron's motion in this respect too.

The Court agrees that the same standard applies to strict liability and negligence

claims brought pursuant to New York law, since "[u]nder New York law, a Plaintiff's claim based upon an alleged design defect or manufacturing defect sounding in either negligence or strict liability are functionally equivalent and will be analyzed concurrently." Oden v. Boston Sci Corp., 330 F.Supp.3d 877, 887 (E.D.N.Y. 2018) (citing Jarvis v. Ford Motor Co., 283 F.3d 33, 62-63 (2d Cir. 2002); Monell v. Scooter Store, Ltd., 895 F.Supp.2d 398, 415-16 (N.D.N.Y. 2012); Cowan v. Wholesale Corp., No. 15-CV-05552, 2017 U.S. Dist. LEXIS 1714, 2017 WL 59080, at *4 (E.D.N.Y. Jan. 5, 2017); Castaldi v. Land Rover N. Am., Inc., 06-CV-1008, 2007 U.S. Dist. LEXIS 85809, 2007 WL 4165283, at 811 (E.D.N.Y. Nov. 21, 2007). The same principle applies to failure-to-warn claims. Id. (citing Estrada v. Berkel, Inc., 14 A.D.3d 529, 530 (App. Div. 2005)); Monell, 895 F.Supp.2d at 416; Sorta-Romero v. Delta Int'l Machinery Corp., No. 05-CV05172, 2007 U.S. Dist. LEXIS 71588, 2007 WL 2816191, at *11 (E.D.N.Y. 2007); Savage v. Beiersdorf, Inc., No. 13-CV-0696, 2013 U.S. Dist. LEXIS 144749, 2013 WL 5534756, at *5 (s.D.N.Y. Sept. 30, 2013)).

Following this standard, the Court will deny the motion to dismiss Plaintiff's negligence claims for the same reasons that the Court denied the motion with respect to the strict liability claims.

**C.   Warranty Claims**

Itron next seeks dismissal of Plaintiff's breach of express and implied warranty claims. With reference to the express warranty claim, Itron contends that Plaintiff fails to allege with sufficient particularity any representations made to Microbac regarding the products in question. With reference to the implied warranty claim, Defendant argues that Plaintiff has not made out a claim for a design defect, and therefore cannot make out an implied warranty claim.

10

Plaintiff's warranty claim alleges, in relevant part that:

41. Defendants, Itron, Inc. and ARB Installation Products, Inc., warranted by implication that the subject meter and meter cabinet/pan were fit and reasonably safe for use and made in consideration of reliable research conducted by qualified and knowledgeable experts and professionals.
42. Further, the Defendants made express representations about the quality, design, and fitness of the products as an inducement to encourage the purchase of the products.
43. Defendants' warranties were not true and the products were not safe or reasonably suitable and fit for the uses intended and expected by the Defendants to the public, including this Plaintiff's insured.
44. The breaches of express and implied warranties by Defendants were the proximate cause of the aforementioned fire as alleged in this complaint.
45. The Defendants breached the warranties in that the subject meter and meter cabinet/pan failed to operate as promised, implied, expected and relied upon.

Complt. at ¶ 41-45.

The Court first addresses the express warranty claim. As a general matter, "a cause of action on an express warranty asks only that a manufacturer make good on the contractual commitment that it voluntarily undertook by placing that warranty on its product." Bates v. Dow Agrosciences, L.L.C., 544, U.S. 431, 444 (2005). In New York, a "seller can create an express warranty by affirmation, promise, description or sample." Kraft v. Staten Island Boat Sales, Inc., 715 F.Supp.2d 464, 472 (S.D.N.Y. 2010). To prevail on an express warranty claim, a Plaintiff must "show that there was an 'affirmation of fact or promise by the seller, the natural tendency of which [was] to induce the buyer to purchase' and that the warranty was relied upon[.]" Schimmenti v. Ply Gem Indus., 156 A.D.2d 658, 659, 549 N.Y.S.2d 152, 154 (2d Dept., 1989) (quoting Friedman v. Medtronic, Inc., 42 A.D.2d 185, 190 (N.Y. App. Div., 2d Dept., 1973)); see also Promuto v. Waste Mgmt., Inc., 44 F.Supp.2d 628, 642 (S.D.N.Y. 1999) (In New York a breach of warranty

claim requires a "showing that: (1) plaintiff and defendant entered into a contract; (2) containing an express warranty by the defendant with respect to a material fact; (3) which warranty was part of the basis of the bargain; and (4) the express warranty was breached by defendant[.]"); Kraft, 715 F.Supp.2d 473 (express warranty exists under New York law when a plaintiff shows "that the statement falls within the definition of a warranty, that she relied on it, and that it became the basis for the bargain."). An express warranty is interpreted like a contract, and a Plaintiff can provide evidence of the warranty through various means. Mill Printing & Lithography Corp. v. Solid Waste Management Systems, Inc., 65 A.D. 590, 590-91, 409 N.Y.S.2d 257, 258 (2d Dept. 1978). "[A]ffirmative representations" can create express warranties. Symphony Fabrics Corp. v. Creations by Aria, Inc., 111 A.D.2d 650, 651, 490 N.Y.S.2d 212, 213 (1st Dept. 1985). An "express warranty is as much a part of the contract as any other term. Once the express warranty is shown to have been relied on as part of the contract, the right to be indemnified in damages for its breach does not depend on proof that the buyer thereafter believed that the assurances of fact made in the warranty would be fulfilled." CBS, Inc. v. Ziff-Davis Pub. Co., 75 N.Y.2d 496, 503, 553 N.E.2d 997, 1001 (1990). A party seeking indemnification under the warranty need only "[establish] that the warranty was breached." Id. at 504.

      The Court will deny the motion in this respect as well. While the express warranty claim is largely conclusory, the Complaint contains enough detail to push those allegations into the category of plausible. Plaintiff identifies the products about which the Defendants allegedly offered the warranties, and explains the type of warranties that were offered. Discovery will determine exactly what type of warranties Defendants offered, or if they

12

offered any warranties at all. Accepting all facts alleged as true, the Court finds the Complaint (barely) sufficient to meet the pleading standard and move the case towards discovery.

To prevail on a breach of implied warranty claim, "a plaintiff must show that the product was not 'reasonably fit for [its] intended purpose.'" Wojcik v. Empire Forklift, Inc., 14 A.D.3d 63, 65 (3d Dept. 2004) (quoting Saratoga Spa & Bath v. Beeche Sys. Corp., 230 A.D.2d 326, 330 (N.Y. 1997)). That "inquiry . . . 'focuses on the expectations for the performance of the product when used the customary, usual and reasonably foreseeable manners.'" Id. (quoting Denny v. Ford Motor Co., 87 N.Y.2d 248, 258-259 (N.Y. 1995)). A breach of implied warranty claim requires a showing "(1) that the product was defectively designed or manufactured; (2) that the defect existed when the manufacturer delivered it to the purchaser or user; and (3) that the defect was the proximate cause of the injury." Oden, 330 F.Supp.3d at 895.

The Court will deny the motion in this respect too. Here, Defendant's argument is premised on Itron's claim that Plaintiff has not sufficiently pled a products liability claim. The Court has determined that Plaintiff has alleged facts sufficient to make plausible that Itron's product was defectively designed or manufactured when Plaintiff's insured took delivery, and that those defects caused an injury.

**E.   Damages**

Finally, Itron argues that "Plaintiff must plead legally cognizable and specifically articulated injuries in order to sufficiently plead any cause of action against Moving Defendant and to adequately put Moving Defendant on notice of its claims." Here, Itron insists, Plaintiff's Complaint "merely alleges that 'there was electrical activity in a utility

room at the subject property causing fire, water and smoke damage to Microbac's real and personal property as well as a loss of use of said property." While Plaintiff alleges that Microbac suffered more than $3.7 million in damages, Defendant contends that "Plaintiff fails to specify and delineate the nature of its injuries," and has failed to "apportion" between injuries to property and injuries for loss of use. These failings, Defendant claims, mean that Plaintiff has failed to state a claim. Plaintiff responds that, at this stage in the litigation, detailed factual allegations of damages are not necessary.

The Court notes that Itron does not point to any legal standard that requires a detailed accounting in the complaint of the damages suffered by plaintiff in order to make "plausible" a plaintiff's right to relief. The Court is not aware of any such pleading requirement. Defendant will have an opportunity to dispute whether Itron's conduct caused Microbac's damages after discovery. Defendant will also be permitted to challenge how Plaintiff calculates any such damage at the close of discovery. At this point, however, Plaintiff's claims are sufficient to get to discovery. The motion will be denied in this respect as well.

## IV.   CONCLUSION

For the reasons stated above, Defendant Itron's motion to dismiss, dkt. # 23, is hereby DENIED.

**IT IS SO ORDERED**.

Dated: January 18, 2022
        Binghamton, New York

Thomas J. McAvoy
Senior, U.S. District Judge