UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
Zurich American Insurance Company, as subrogee
of Microbac Laboratories, Inc.,                           Civil Action No. 5:21-cv-0374
                                                          (TJM/ATB)
      Plaintiff,

          v.

National Grid USA Service Company, Inc.,
Itron, Inc. and ABB Installation Products, Inc.,

      Defendants.
-------------------------------------------------------------X

# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# MOTION FOR SUMMARY JUDGMENT

                                                                   LAVIN, CEDRONE, GRAVER, BOYD & DISIPIO
                                                                   TIMOTHY J. MCHUGH, ESQ.
                                                                   420 LEXINGTON AVENUE, SUITE 33
                                                                   NEW YORK, NY 10170
                                                                   ATTORNEYS FOR NIMO

**TABLE OF CONTENTS**

**Page**

Table of Authorities..................................................................................................iii

Argument… ...............................................................................................................1

    A. Summary Judgment Standard....................................................................1

    B. Standard of Care .......................................................................................1

    C. Causation ..................................................................................................4

        1. *Union Mutual Fire Insurance Co. v. Ace Caribbean Market* provides the controlling law................................................................4

        2. The final step of Mr. DeMatties' methodology is unreliable. The parts of his methodology not questioned by this Motion are irrelevant to it. ...................................................................................5

        3. The law of New York requires the elimination of all non-remote causes. An expert's assertion that one cause is "the most probable" is irrelevant. ............................................................................................7

        4. Unreliable Expert Testimony is Not a Bar to Summary Judgment. ...........9

Conclusion. ..............................................................................................................10

# TABLE OF AUTHORITIES

Page

**Cases**

*Allstate Ins. Co. v. Gonyo*, 2009 WL 1212481 (N.D.N.Y. Apr. 30, 2009)....................10

*Allstate Ins. Co. v. Hugh Cole Builder, Inc.*, 137 F. Supp. 2d 1283 (M.D. Ala. 2001) ..................10

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir. 2002)....................6,7

*Foley v. United States,* 294 F.Supp.3d 83 (W.D.N.Y. 2018)..........................................3

*General Electric Co. v. Joiner*, 522 U.S. 136, 144 (1997) ................................................6

*Higgins v. New York City Housing Authority,* 702 N.Y.S.2d 502 (Civ. Ct. 1999)..........................2

*Ivory v. IBM*, 116 A.D.3d 121, 983 N.Y.S.2d 110 (3d Dept. 2014)................................2

*King v. Crossland Savings Bank,* 111 F.3d 251 (2d Cir. 1997).........................................1

*Leandro v. Wal-Mart Supercenter Store #2104*,
    2021 WL 2742622 (S.D.N.Y. June 30, 2021) ....................................................7

*Peerless Ins. Co. v. Marley Engineered Prod. LLC*, 2008 WL 7440158
    (E.D.N.Y. June 12, 2008) ..................................................................................10

*St. Paul Mercury Ins. Co. v. Pepsi-Cola Bottling Co. of New York*,
    2007 WL 2262889 (E.D.N.Y. Aug. 3, 2007) .................................................7-8

*Souza v. Exotic Island Enterprises, Inc.,* 2023 WL 3556053 (2d Cir. May 19, 2023) .................6,7

*Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441 (2d Cir. 2023) .....................*passim*

A.   **Summary Judgment Standard.**

Zurich cites *King v. Crossland Savings Bank,* 111 F.3d 251, 259 (2d Cir. 1997), as stating that "summary judgment is highly unusual in a negligence action where the assessment of reasonableness generally is a factual question to be addressed by the jury." NIMO's motion in no way relies on an assessment of reasonableness. Zurich's evidence is legally insufficient to prove that NIMO was negligent or that its actions caused the fire.

B.   **Standard of Care.**

NIMO's first argument in support of its motion for summary judgment is that Zurich has failed to offer evidence that NIMO breached an applicable standard of care, which must be produced to show NIMO acted negligently. NIMO Opening Memorandum at 15-16. Zurich's opposition to this argument includes two legal citations and one citation to the record. Plaintiff's Memorandum at 10-14. None address the standard of care question.

Zurich cites *Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 445 (2d Cir. 2023), for the elements of negligence and quotes a paragraph from the *Union Mutual* opinion dealing with *causation,* not negligence. Plaintiff's Memorandum at 10. NIMO will address Zurich's causation argument in section C, below, but regarding negligence, the *Union Mutual* opinion explains that the questions of negligence and causation are separate, and proof of causation, even if convincing, does not constitute proof of negligence.

> At most, Union Mutual therefore produced weak circumstantial evidence that something wrong with the extension cords caused the fire. But, even assuming a reasonable jury could so conclude, Union Mutual showed no evidence of negligence whatsoever on defendants' part, and ***evidence of causation by itself is not evidence of negligence.*** See *Martin v. Herzog*, 126 N.E. at 816 ("We must be on our guard, however, against confusing the question of negligence with that of the causal connection between the negligence and the injury."). The fire marshals' testimonies that the fire originated in the extension cords

1

> do not, on their own, show that the defendants were negligent in
> their use of the extension cords.

*Id.* at 447 (emphasis added). Mr. DeMatties testimony that the fire started at the blades does not, on its own, show that NIMO was negligent in its treatment of the blades.[1]

Zurich cites *Higgins v. New York City Housing Authority,* 182 Misc. 2d 728, 702 N.Y.S.2d 502 (Civ. Ct. 1999), for the proposition that a utility "is liable for negligence in providing goods or services that cause harm." Plaintiff's Memorandum at 11. This proposition is true and irrelevant. NIMO is liable for negligence only if negligence is proven. A plaintiff must prove a deviation from the standard of care in order to prove negligence. "Expert testimony is necessary to prove a deviation from accepted standards of care and establish proximate cause unless the matter is one which is within the experience and observation of the ordinary juror." *Ivory v. IBM*, 116 A.D.3d 121, 127, 983 N.Y.S.2d 110, 115 (3d Dept. 2014).

Zurich's expert provided extensive speculation regarding what NIMO may have done that could have caused the fire. He never testified that any of those things would not have been done by a reasonably prudent electric utility. He said that the meter was installed even though it was fourteen years old but did not say meters must be discarded fourteen years after purchase. He said the blades might have been cleaned with a wire brush but did not say electric utilities should not clean blades with wire brushes. He said that visual inspection might fail to detect corrosion but did not say that the standard of care required utilities to replace visual inspection with some other way to detect corrosion. *See* NIMO's Opening Memorandum at 7 to 14.

Plaintiff's Memorandum does not use the phrase "standard of care" nor does it point to

---

[1] Zurich states: "Bill Patrick concedes that he and Bud DeMatties agree on the point of origin of the fire." Plaintiff's Memorandum at 12. This is incorrect. Mr. Patrick's opinion is not that the fire started at the blades. His report states it "originated in the meter enclosure and spread to both these meter bayonet terminals [blades] of the electric meter." Exhibit L at 28. He testified: "The area of origin was reduced down for our examination to inside the meter enclosure . . .. And then further nailed down to the socket area for the meter, which *contained all the bus bars and the bypass switch*. . . . It was approximately an 8 inch area." Exhibit M at 18:2-12 (emphasis added).

any testimony from its expert identifying anything done by NIMO as something that a reasonably prudent utility would not do. There is no "factual issue" regarding the content of the expert testimony. There is no standard of care testimony. NIMO's argument on this issue is unanswered.

Zurich's case is analogous to a medical expert testifying that a defendant physician caused a bad medical result without establishing that there was a standard of care that the physician violated. A bad result does not establish medical malpractice liability. There must be expert testimony establishing a standard of care and evidence establishing a breach of the standard of care. *Foley v. United States,* 294 F.Supp.3d 83, 96 (W.D.N.Y. 2018).

Zurich complains that NIMO did not establish a standard of care. "Defendant cleans the meter blades with a wire brush to remove any grub. However, defendant has no standards or specifications as to how this can be done." Plaintiff's Memorandum at 12. First, of course, this is false. NIMO required the blades to be inspected after cleaning and, as Mr. DeMatties admitted at his deposition, meters were not put back into service if any copper showed on the blades because the tin coating had been damaged in the cleaning process. николай's Opening Memorandum at 4-6; 10; Exhibit P, 81:3-20; 83:22 to 84:13. NIMO had an established procedure, but even if it did not have one, NIMO is a defendant. NIMO has no duty to establish a standard of care.

The only citation to the record in Zurich's argument on this issue appears on page 13 of its Memorandum. It consists of two brief paragraphs from two pages of Mr. DeMatties' deposition stating that the condition of the blades was "possibly being damaged" and the NIMO

employee inspected the Microbac socket before he installed the meter.[2] These brief paragraphs do not state that the standard of care for electrical utilities 1) is to discard meters if they have been removed from service to be tested; 2) is not to use wire brushes to clean blades on meters; or 3) is not to rely on visual inspection of meter blades to determine if they are fit for use. The paragraphs state a causation opinion, but do not claim that any of these activities are negligent.

If Mr. DeMatties had made any such claims his opinion could be tested based on the relevant government regulations, industry standards and technical literature. NIMO suggests that the reason there is no standard of care opinion is that there is no scientific or engineering support for a standard of care that NIMO did not conform to. Whatever the reason, however, there is no standard of care evidence in this record and that is fatal to Zurich's case.

**C. Causation.**

Zurich has broken its argument on causation into four sections. Plaintiff's Memorandum at 14 to 24. Zurich claims Mr. DeMatties identified the "most likely" cause of the fire. The controlling precedent is clear, however, that on a motion for summary judgment a court should examine the basis for an expert's opinion and disregard an opinion that is legally irrelevant or has an unreliable basis.

    **1.** *Union Mutual Fire Insurance Co. v. Ace Caribbean Market* **provides the controlling law.**

Zurich argues that because it has a retained an expert who claims to have eliminated other causes this case is distinguishable from *United Mutual.* Plaintiff's Memorandum at 14-15. Plaintiff presented expert opinion evidence in *Union Mutual*. The fire marshals provided expert opinion testimony that the fire originated "where the extension cords were found." 64 F.4th at

---

[2] Mr. DeMatties stated that the NIMO installer "tested" the Microbac socket. The installer visually inspected the outside of the socket for exterior damage. The socket belonged to Microbac and the installer does not test or inspect the interior of the sockets which are the property of the electricity customer. Exhibit D at 34:5 to 35:14; 36:18 to 38:3; 44:16-23; 67:7-16; 100:21 to 101:11.

444. In that case plaintiff argued that the fire marshals' expert opinions in regard to the fire's origin provided the basis to conclude that other causes were sufficiently eliminated. In fact, to make the match between this case and *Union Mutual* even closer, one of the fire marshals "believed that the extension cords were the probable cause of the fire." *Id.* at 444.

Zurich's Memorandum contains a misleading citation to the opinion: "The *Union Mutual* court found no such strong link because the experts in that case 'both concluded that defendants' actions did not contribute to the fire.' *Union Mutual,* 64 F.4th 441 at 447." Plaintiff's Memorandum at 15. The entire sentence partially quoted by Zurich is as follows: "And defendants' experts both concluded that defendants' actions did not contribute to the fire." *Id.* at 447. The opinion of defendant's expert in this case, Mr. Patrick, is that "the actions of National Grid and its employees who tested, cleaned and installed the subject electric meter did not cause and/or contribute to the initiation of this fire." Exhibit L, page 39. Zurich's attempt to distinguish this case from *Union Mutual* is without merit.

*Union Mutual* is on point because Mr. DeMatties' attempt to eliminate other causes does not have a reliable basis. Zurich notes that *Union Mutual* states that it is possible to prove causation by circumstantial evidence. Plaintiff's Memorandum at 15. More relevant, however, is that in *Union Mutual,* and in this case, the circumstantial evidence is insufficient. Proof of a case through circumstantial evidence requires the exclusion of all non-remote causes. In *Union Mutual* the possible non-remote cause that was fatal to plaintiff's case was "the extension cords and the power strip could have had manufacturing defects." *Id.* at 444. Both the Microbac socket and the broken spring provide other possible causes, less remote than possible manufacturing defects.

> 2. **The final step of Mr. DeMatties' methodology is unreliable. The parts of his methodology not questioned by this Motion are irrelevant to it.**

NIMO's Motion relies on the fact that nothing reliable supports Mr. DeMatties' rejection of the non-remote possible causes of this fire. No matter how many steps of the National Fire Protection Association Guide for Fire and Explosion Investigations Mr. DeMatties followed, if at the end of that procedure he rejected non-remote possible causes of this fire on the basis of nothing but his word, the opinion is insufficient to get this case to the jury.

Mr. DeMatties provided no basis for excluding the broken spring[3] as a cause of the fire. NIMO Opening Memorandum at 11-14. He pointed to the NIMO installer's visual inspection of the outside of the socket to exclude it as a cause but admitted that interior faults might have existed that could not be observed by exterior inspection. He relied on the visual inspection of the socket but discounted the visual inspection of the blades by that same installer and the NIMO employees who cleaned the meter and put it back in service. *Id.* at 4-5, 10-11.

NIMO's Motion is not a claim that Mr. DeMatties did nothing right. It is his last step, his rejection of the non-remote causes, which is without a reliable basis. " 'In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of' multiple factors, including 'the method by which the expert draws an opinion,' and 'should only exclude the evidence if the flaw is large enough that the expert lacks good grounds for his or her conclusions.' " *Souza v. Exotic Island Enterprises, Inc.*, 2023 WL 3556053, at *8 (2d Cir. May 19, 2023), *quoting Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Electric Co. v. Joiner*, 522 U.S. 136, 144 (1997).

No matter how many proper steps are present in his methodology, if his last step is to

---
[3] Photographs of the remains of the spring are attached to the Supplemental Affidavit of Timothy J. McHugh as Exhibit R.

reject non-remote causes without a reliable scientific basis, his final opinion is unreliable. Zurich attempts to distinguish this case from the cases cited in NIMO's opening brief which hold that an unreliable expert opinion cannot save a plaintiff's case from summary judgment. Plaintiff's Memorandum at 18-20. NIMO distinguishes them by claiming that Mr. DeMatties' rejection of the non-remote causes is a reliable opinion, while these cases involve experts who issued unreliable opinions. Zurich assumes what is to be proved. If the final step in Mr. DeMatties work is without a reliable basis, *Union Mutual* is on point and NIMO is entitled to summary judgment.

Discussing *Leandro v. Wal-Mart Supercenter Store #2104*, 2021 WL 2742622 (S.D.N.Y. June 30, 2021), Zurich claims, without a citation to the record, that "Mr. DeMatties did in fact point to circumstantial evidence that NIMO created the dangerous condition." Plaintiff's Memorandum at 20. Mr. DeMatties offered the opinion that circumstantial evidence supported the conclusion that the blades caused the fire by saying other causes were excluded. He offered no circumstantial evidence that NIMO created the dangerous condition, only speculation. That the blades might have been cleaned is not circumstantial evidence that they were cleaned improperly. That NIMO employees, both those involved in cleaning the meter and the installer, visually inspected the blades is not evidence that there was corrosion on the blades that was not observed. There is no evidence, circumstantial or direct, that something was wrong with the blades because of some act of a NIMO employee.

Zurich states that NIMO has made a "vague suggestion that Mr. DeMatties' opinion might not survive a *Daubert* challenge." Plaintiff's Memorandum at 20. On the contrary, NIMO argues that under the Second Circuit's authoritative interpretations of *Daubert, Souza v. Exotic Island Enterprises* and *Amorgianos v. Amtrak,* Mr. DeMatties' exclusions of the spring and Microbac socket should be disregarded as unreliable. NIMO Opening Memorandum at 21-22.

7

### 3. The law of New York requires the elimination of all non-remote causes. An expert's assertion that one cause is "the most probable" is irrelevant.

Zurich cites *St. Paul Mercury Ins. Co. v. Pepsi-Cola Bottling Co. of New York*, 2007 WL 2262889 (E.D.N.Y. Aug. 3, 2007), under the heading "Plaintiff's Expert Determined the Most Probable Cause of the Fire and the Existence of Other Possible Causes Does Not . . . Provide a Basis for Summary Judgment." The opinion holds that when a plaintiff's expert identifies one cause, without reasonably excluding other non-remote causes, summary judgment is appropriate. Plaintiff's expert identified a cause of the fire yet summary judgment was entered for the defendant because the expert's excluded a cause without a reliable basis. *Id.* at *6–7. The expert was discounted because "there are no facts which make it more likely that the fire was caused by any actions on [plaintiff's] part as opposed to any actions on [defendant's] part." *Id.* at *10.

The claim that Mr. DeMatties identified "the most probable cause" should be rejected as unreliable. Beyond that, however, Mr. DeMatties never claims that other possibilities were remote. He did not claim that the possibility that a problem with the Microbac socket was the cause of the fire was remote, just that his chosen cause was "more likely." Exhibit P at 68:44; 76-77. He did not claim that the possibility that the spring caused the fire was remote, nor did he deny the physical evidence of arcing on the spring. Exhibit P at 133:13 to 137:5. He could not say this arcing was the "initiating factor of the fire." Exhibit P at 137:4-5.

Plaintiff states: "While [Mr. DeMatties] has acknowledged some other possibilities, he has denied that they are equally as plausible." Plaintiff's Memorandum at 21. The standard is not that plaintiffs must exclude only those causes which are "equally as plausible." The standard is, as the cases cited by Zurich on that page hold, causes that are not remote must be excluded.

The identification of "the most probable cause" is legally irrelevant. Every cause must be eliminated except "remote possibilities that the injury was not caused by the defendant." *Id.* at

*6. Mr. DeMatties did not identify remote causes. He only said other causes were less likely.

In the absence of expert testimony providing a basis for rejecting the spring as a cause of the fire, Zurich's counsel provided an argument. Plaintiff's Memorandum at 22-23. First, it is asserted that it could not be a cause because Mr. Patrick, NIMO's expert, did not identify it in his report as the cause of the fire. Mr. Patrick honestly stated that he could not say to a reasonable degree of scientific or engineering certainty the broken spring caused the fire, only that it was a possible cause. NIMO Opening Memorandum at 6-7. Zurich states that Mr. DeMatties "can't say if the spring was in the meter channel before or after the fire and can't say if it initiated the fire." Plaintiff's Memorandum at 22. At his deposition, however, he acknowledged that the spring was found inside the meter enclosure with the remains of the meter, that it was part of the system of the bypass handle and that it was located within the meter enclosure at the time of the fire. Exhibit P at 132:21 to 135:1. He admitted that the spring made contact with two polarities, creating an arc, but could not say whether that happened before or during the fire, Exhibit P at 136:10-15 or whether that was the initiating factor of the fire. Exhibit P at 137:3-5.

It is not a remote cause. An example of a non-remote cause is supplied by *Union Mutual*: "the extension cords and the power strip could have had manufacturing defects." 64 F.4th at 444. Both the possibility that the spring caused the fire and the possibility that a problem with the Microbac socket are not as remote as possible manufacturing defects.

### 4. Unreliable Expert Testimony is Not a Bar to Summary Judgment.

Zurich's final argument in defense of Mr. DeMatties' opinion on causation states "NIMO's contention that Mr. DeMatties failed to rule out the spring as a cause of the fire is a factual issue to be evaluated by a jury and does not support a motion for summary judgment." Plaintiff's Memorandum at 23-24. There is no "factual issue" here. The many cases discussed

9

above, cited by both sides, establish that New York law provides that for a plaintiff to get to the jury with a case based on circumstantial evidence there must be reliable testimony excluding all non-remote causes other than a negligent act of the defendant. Zurich cites three cases, none of which question the law on which this Motion is based. *Peerless Ins. Co. v. Marley Engineered Prod. LLC*, 2008 WL 7440158, *5 (E.D.N.Y. June 12, 2008) (expert provided reliable analysis that "eliminated as possible sources those devices that were not in the area of origin or were not connected to a power source and contained no internal power source."); *Allstate Ins. Co. v. Gonyo*, 2009 WL 1212481 (N.D.N.Y. Apr. 30, 2009) (no discussion of basis for accepting expert's elimination of other causes); *Allstate Ins. Co. v. Hugh Cole Builder, Inc.*, 137 F. Supp. 2d 1283 (M.D. Ala. 2001), (Alabama law; court found that the expert's failure to exclude another possible cause presented a "difficult question," but denied the motion).

## Conclusion

Like the insurance company's case in *Union Mutual* Zurich's failure of proof is twofold. First, it fails to prove negligence. It does not prove that what NIMO did, keep the meter in service, clean blades with a wire brush, if necessary, rely on visual inspection of blades, would not be done by a reasonably prudent electric utility. "[E]vidence of causation by itself is not evidence of negligence." 64 F.4th at 447 Second, it fails to prove causation. A circumstantial case requires proof excluding every non-remote cause. The opinion of Mr. DeMatties lacks good grounds for the conclusion that the fire was caused by the way NIMO treated the blades on this meter. Summary judgment should be entered for NIMO on both grounds.

Dated: New York, New York
July 14, 2023

LAVIN, CEDRONE, GRAVER, BOYD & DISIPIO

By: ___/s/_____
Timothy J. McHugh, Esquire